**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

IN RE:

                                       **Chapter 11**

**LDG SOUTH, LLC,**                        **Case No. 9:09-bk-24038-ALP**

       **Debtor.**

_____/

**<u>MOTION FOR ENTRY OF AN ORDER</u>:**

**A. AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OWNED BY DEBTOR FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363;**

**B. ESTABLISHING BID PROCEDURES AND SALE PROCESS;**

**C. APPROVING AGREEMENT FOR PURCHASE AND SALE;**

**D. APPROVING FORM AND MANNER OF NOTICES;**

**E. SCHEDULING AUCTION AND FINAL SALE APPROVAL HEARING;**

**F. AUTHORIZING THE REJECTION OF CERTAIN EXECUTORY CONTRACTS AT THE SALE HEARING AND AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF OTHERS; AND**

**G. GRANTING RELATED RELIEF**

---

NOTICE OF HEARING

HEARING SET FOR MAY 19, 2010, AT 2:00 P.M. IN TAMPA, FLORIDA
(BEFORE THE HONORABLE CARYL DELANO, COURTROOM 10B)

---

LDG South, LLC ("Debtor"), through undersigned counsel, pursuant to 11 U.S.C.

§§ 105, 363 and 365, Fed. R. Bank. P. 2002, 6004, 6006, and 9014 and Local Rules

2002-1, 6004-1, and 9014-1, moves the Court ("Motion") for entry of an order granting the relief described in the title of this Motion.  In support of the Motion, Debtor states as follows:

## I.  INTRODUCTION

In order to maximize the value of its assets for its estate and its creditors subject to Court approval, the Debtor intends to sell substantially all of its assets and property, as defined below, at auction pursuant to the bidding procedures and sales process described below.  The sale will be "as-is," "where is," without any warranties of any kind, free and clear of all liens, claims and encumbrances.  Additionally, the Debtor seeks to reject various executory contracts as described below, and to assume and assign others as also described below.

## II.  JURISDICTION, VENUE, AND STATUTORY AND PROCEDURAL BASIS

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)(N) and (O).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the requested relief are sections 105(a), 363(b), (f), (k), and (m), and 365(a) and (f) of the Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. ("Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P.") and Local Rules 2002-1, 6004-1, and 9014-1.

## III.  BACKGROUND

### A.    Debtor's Business and Bankruptcy Filing

2.       Debtor is a limited liability company organized and existing under the laws of the State of Florida.  Debtor owns 20 parcels (two of which have model homes) of real property in a residential development in Collier County known as Miramonte, and another 40 parcels (two of which have model homes) in a development known as Torino.  Debtor is in the business of selling residential lots in these developments and building luxury single family residences for the buyers.  Debtor's headquarters are located at 5692 Strand Court, Naples, Florida 34110.  The Debtor owns additional personal property valued at approximately $900,000, largely consisting of model home furnishings.

3.       On October 22, 2009, Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code ("Petition Date").  Debtor is operating its business and managing its affairs as debtor-in-possession pursuant to the authority of Bankruptcy Code §§ 1107(a) and 1108.

4.       No statutory committee has been appointed in this case.

### B.    Debtor's Pre-Petition Secured Indebtedness

5.       On March 25, 2008, Debtor obtained financing from Bank of America, N.A. ("BOA") pursuant to a Promissory Note (Renewal) in the principal sum of $27,000,000.00 (the "Note").  The Note is secured by, among other things, the following instruments and documents: a) Real Estate Mortgage, Assignment, Security Agreement and Fixture Filing dated March 24, 2005, and recorded at Official Records Book 3761, Page 2900, as modified by: (i) Mortgage Spreader Agreement recorded at Official

Records Book 3783, Page 933; and (ii) Memorandum of Modification Agreement recorded in Official Records Book 4416, Page 643, all of the Public Records of Collier County, Florida (as so modified, the "Mortgage"); b) Amended and Restated Master Loan Agreement dated April 21, 2005, between BOA and Debtor (the "Loan Agreement"); and c) UCC-1 Financing Statements naming Debtor, as borrower, and BOA as Secured Party, filed with the Florida Secured Transaction Registry on March 31, 2005 under File No. 200509322539 and recorded on March 29, 2005, in Official Records Book 3761, Page 2928 of the Public Records of Collier County, Florida (collectively, the "Financing Statements" and the Financing Statements, the Note, the Mortgage, the Loan Agreement and all other documents evidencing or securing or entered into in connection with the Loan, collectively, the "Mortgage Documents").   A copy of the Mortgage Documents are attached to BOA's Emergency Motion for Relief from Stay (the "Stay Relief Motion") (Dkt. #54) as Exhibits "A" through "D" respectively.

6.      Pursuant to the Mortgage Documents, BOA holds a blanket lien encumbering all of Debtor's assets.

7.      As of the Petition Date, the sum of $18,889,198.65 ("Secured Debt") is due and owing to BOA under the Mortgage Documents.  The Debtor has reviewed the claim for the Secured Debt, and finds no basis to dispute this sum, that this sum is the most senior lien against the assets of the Debtor, and that it is fully valid and enforceable.

8.      On April 20, 2010, AGR TM, L.L.C. ("AGR"), a Delaware limited liability company, acquired all right, title, and interest in the Mortgage Documents from

4

BOA, pursuant to a certain Loan Sale and Assignment Agreement ("Loan Sale Agreement").

### C.    Debtor's Post-Petition Financing

9.    On December 2, 2009, Debtor, with interim Court approval (Dkt. # 101), entered into a post-petition financing arrangement with some of the principals of the Debtor defined in that Order and the attached loan documents as the Junior DIP Lender ("Junior DIP Lender") under which the Debtor was authorized to and did borrow $150,000.00 ("Junior DIP Facility").   The Junior DIP Facility loan documents are attached to the Debtor's motion seeking approval to enter into the DIP Facility (Dkt. # 10).  Junior DIP Lender received a second priority lien and security interest and priority status pursuant to § 364(c)(1), except for the super-priority administrative expense granted to BOA under § 364(c)(1) of the Bankruptcy Code.

10.    On December 30, 2009, Debtor, with interim Court approval (Dkt. #121), entered into another post-petition financing arrangement with BOA under which Debtor borrowed $30,244.00.  On February 18, 2010, Debtor, with interim Court approval (Dkt. #136), entered into another post-petition financing arrangement with BOA under which the Debtor borrowed an additional $26,125.80 (the $30,244.00 and $26,125.80 collectively, "DIP Facility"), and (the "Secured Debt" and the "DIP Facility" collectively, the "AGR Secured Indebtedness").  BOA was granted super-priority secured status and a priming lien pursuant to Bankruptcy Code § 364 encumbering all of Debtor's assets.

11.    Pursuant to the Loan Sale Agreement, AGR acquired all right, title, and interest in the DIP Facility from BOA.

**D.      Debtor's Post-Petition Activities**

12.     The Debtor's schedules state that the Secured Debt is more than the market value of its assets.  BOA nonetheless filed their Stay Relief Motion (Dkt.#54).  In its motion, BOA contends that the fair market value of Debtor's assets is significantly less than the Secured Debt and additionally, any reorganization by Debtor is not feasible. Additionally, on November 10, 2009, BOA also filed an objection to Debtor's motion to obtain authority to obtain post-petition financing and, among other things, grant senior liens (Dkt.#55).  In connection with these filings, BOA also filed a separate motion to dismiss.

13.     BOA's motions remain pending.  Debtor has not obtained any post-petition financing granting any senior liens except additional sums advanced by BOA for basic maintenance.  Debtor has not been able to obtain post-petition financing granting any additional junior liens except that previously approved by the Court from some of its principals.

14.     The Debtor has been informed that AGR desires that the Debtor seek a sale of its Property (as defined below) under Section 363 of the Code.  Debtor hereby acknowledges that it has been informed by AGR that AGR is willing to release those certain individuals and entities (the "Guarantors") who have guaranteed the Secured Indebtedness from such guaranty on the condition that (i) each such Guarantor withdraw any claims, appeals, and litigation related to the Property or the Loan or this case; (ii) enter into a dismissal of any litigation pending between the Guarantors and BOA and/or AGR, with prejudice, (iii)  release all claims against and interests in Debtor; and (iv)

enter into a guaranty pursuant to which they jointly and severally guaranty to AGR Debtor's obligations under and the accuracy of any representations and warranties set forth in the APS (as defined below).  Such release and the conditions for the granting thereof are more fully addressed in Paragraph 7 of the APS.

15.      In light of these events, Debtor desires to seek an asset sale pursuant to Bankruptcy Code § 363, which sale is in the best interest of its estate and its creditors.

## IV.  PROPOSED SALE TRANSACTION, BIDDING PROCEDURES AND SALE PROCESS

### A.      Sale Transaction

16.      The Debtor intends to sell substantially all of its assets and property pursuant to an Agreement for Purchase and Sale ("APS"), a copy of which is attached hereto as Exhibit "A," or otherwise through the sale process described in this Motion, pursuant to the schedule proposed herein, and consistent with: (i) the due process requirements of Bankruptcy Code and Fed. R. Bankr. P.; and (ii) the APS.   The assets and property ("Property") to be sold are expressly defined in the APS.  The APS as attached is drafted for the transaction contemplated between the Debtor and AGR.  Should a party bid above any bid made by AGR as contemplated herein and win the auction, Debtor will enter into the APS with that highest and best bidder on terms substantially similar to those found in the APS except as otherwise provided for herein (including in this Paragraph 16), and such other changes as shall be needed to reflect the name of the buyer and the purchase price.   The release of Guarantor's obligations described in Paragraph 14 shall not be applicable if there is a Successful Bidder (as defined below) other than AGR because such Successful Bidder will merely be

purchasing the Property and not the AGR Secured Indebtedness, and therefore will not have the right to release the Guarantors from any of their obligations under the Mortgage Documents.    Thus, the provisions concerning AGR's consensual release of the Guarantors set forth in the in Paragraph 14 and the APS will not apply if there is a Successful Bidder other than AGR.  The Guarantors are the members of the Debtors and affiliated individuals and entities.

17.    The APS contemplates, *inter alia*, the following:[1]

Seller:  Debtor

Buyer:  AGR or the Highest and Best Bidder

Property:  Substantially all of the assets of the Debtor.

Purchase Price:    The Purchase Price for the Property shall be at least $11,800,000.00 (the "Purchase Price").  As stated above, pursuant to Bankruptcy Code § 363(k), AGR, or its assignee, may credit bid up to the value of the AGR Secured Indebtedness, i.e. $18,945,568.45 (the "AGR Credit Bid").

Deposit:  There shall be no deposit required for AGR up to its credit bid.  Given the amount associated with the AGR Credit Bid, any party wishing to submit a bid must deposit a minimum of $1,180,000.00 paid by cash or cash equivalent. The deposit shall be tendered in cash or cash equivalent into a segregated bank account established by Debtor's counsel.

Free and Clear:  Debtor will convey the Property to the ultimate buyer free and clear of all liens, claims, liabilities, encumbrances, and other interests (except ad

---

[1]    The above terms are merely set forth for convenience.  The APS should be consulted for the actual terms of the sale.  In the event of a conflict, the terms of the APS control.

valorem taxes), which shall attach to the proceeds pursuant to Bankruptcy Code §
363.

<u>Closing</u>:  The Closing of this transaction shall occur no later than 60 days after
entry of a final Order approving the sale transaction.

**B.     Sale Process**

18.     Debtor seeks to foster a competitive bidding process and will accept the
highest and best offer for the Property as determined by the Debtor and its professionals,
subject to the AGR Credit Bid.  Accordingly, Debtor seeks approval and implementation
of a three-step sale process, as follows:

(a)     a "Bid Procedures and Sale Process Hearing" to occur on May 19, 2010 at
2:00 p.m., or at such other time scheduled by the Court, at which Debtor
will seek approval of: (i) the Bid Procedures (as defined herein) for
bidding on the Property; (ii) the form and manner of notice of the Bid
Procedures and the proposed sale of the Property; (iii) the form of the APS
to be used in conjunction with the sale of the Debtor's Property; and (v)
the scheduling of an auction and a sale approval hearing.

(b)     an "Auction" to be conducted in accordance with the Bidding Procedures;
and to occur on (to be approved and set by the Court) _____,
2010 at _____ a.m./p.m. at the offices of Stichter, Riedel, Blain & Prosser,
P.A., 110 Madison Street, Suite 200, Tampa, Florida 33602.

(c)     a hearing approving the sale to the successful bidder (the "Final Sale
Hearing) no later than two days following the conclusion of the Auction,

to occur on  (to be approved and set by the Court) _____, 2010 at

__:____ a.m./p.m., or at a time convenient to the Court.

19.     Debtor expects to be able to meet its burden at the Final Sale Hearing to confirm the sale by demonstrating that sale efforts have been appropriately conducted for the Property.  Although Debtor's focus to date has been on selling individual lots of the Property and on obtaining DIP financing, Debtor's focus is shifting to ensure that the entirety of the Property is marketed appropriately for a sale.  To that end, Debtor is exposing the Property to an appropriate competitive sale process, and the bidding and auction procedures will provide for a competitive process to achieve the highest and best offer.  Debtor will make necessary efforts to market the Property to anyone it knows who has expressed an interest in purchasing such, and, as discussed below, will also publish notice of the proposed sale to ensure that potential purchasers are solicited.

### C.     The Bid Procedures

20.     To ensure the Debtor is able to derive maximum value from the Property, Debtor negotiated with AGR to preserve the right to solicit competing offers for the Property, as provided below.  Indeed, Debtor intends to provide notice of the sale and auction to all parties on the service list and those that have made offers or expressed interest in the Property during the marketing period.  Debtor seeks to adopt procedures that will foster competitive bidding among potential buyers without eliminating or discouraging any qualified bids.

21.     The APS contemplates that the Debtor will solicit higher and better bids for the Property.  Toward that end, Debtor seeks the entry of an order approving the form

of the APS, scheduling an Auction, approving the following procedures ("Bid Procedures"), a copy of which is attached hereto as Exhibit "B" and authorizing the solicitation and submission of competitive bids.  The material provisions of the Bid Procedures are as follows:[2]

Bidding Requirements.  A "Qualified Bid" must (i) provide that the purchase price will be paid in cash at closing; (ii) provide sufficient indicia that any representative of a Qualified Bidder is legally authorized and empowered, by power of attorney or otherwise, to (a) bid on behalf of the Qualified Bidder and (b) complete and sign, on behalf of the Qualified Bidder, a binding and enforceable purchase agreement; (iii) not contain any contingencies to the validity, effectiveness and/or binding nature of the bid, including, without limitation, contingencies for financing, due diligence, or inspection; (iv) provide for post-closing cooperation and assistance to Debtor, as reasonably determined by Debtor; (v) proof of ability, financial or otherwise, to perform on any executory contract to be assumed as required by Bankruptcy Code § 365 and any other applicable law; and (vi) be valid and enforceable through the closing date. Each Qualified Bidder should be prepared to make its best and final offer at the Auction.  AGR, or its assignee, are exempt from these qualifications by virtue of its credit bid under Bankruptcy Code § 363(k).

Bidding Process.  The Auction shall be conducted in accordance with the following bidding process:

---

[2]    The above terms are merely set forth for convenience.  The Bid Procedures should be consulted for the actual terms of the sale.  In the event of a conflict, the terms of the Bid Procedures control.

A.    Any bid must be made by a Qualified Bidder and free of any financing, diligence or other contingencies;

B.    Any successive overbids shall be made by a Qualified Bidder and shall be made in increments of not less than $50,000 of cash consideration in excess of the last submitted, highest, qualified bid for the Property.  AGR shall have the right to match any successive overbid:

C.    Any successive overbid shall be irrevocable unless and until it is not deemed the highest and best bid;

D.    The competitive bidding among Qualified Bidders shall continue according to these procedures until the highest and best bid ("Successful Bidder") to purchase the Property is received by the Debtor ("Winning Bid");

E.    Debtor shall be authorized to accept the second highest and best bid ("Back-Up Bidder") as a back-up bid ("Back-Up Bid") to the Successful Bidder's Bid, provided however, that the Back-Up Bidder agrees that its Back-Up Bid remains irrevocable and Debtor retains the deposit until the closing;

F.    The Successful Bidder shall be required to close 60 days after entry of the order approving the sale to the Successful Bidder, or such earlier date as the Successful Bidder elects to close.  The Purchase Price shall be paid in cash at the closing unless AGR, or

its assignee, are the Successful Bidder by virtue of its credit bid. The Back-Up Bidder shall be obligated to close on the Back-Up Bid if the Successful Bidder does not timely close within 5 days after the Successful Bidder's failure to close;

G.    If AGR, or its assignee, is the second highest bidder, AGR may, or its assignee, at its discretion, act as the Back-Up Bidder if the Successful Bidder does not close for any reason.  If AGR, or its assignee, is not the highest or second highest bidder, AGR, or its assignee, shall, at its election, have the right to stand as an additional back-up buyer if the Successful Bidder or Back-Up Bidder does not close for any reason.

Deposit:  There shall be no deposit required for AGR up to its credit bid.  Given the amount associated with the AGR Credit Bid, any party wishing to submit a bid must deposit a minimum of $1,180,000.00 paid by cash or cash equivalent. The deposit shall be tendered in cash or cash equivalent into a segregated bank account established by Debtor's counsel.

**D.    Form and Manner of Notice of Bidding Procedures and Sale**

22.    Pursuant to Fed. R. Bankr. P. 6004(a), notice of the proposed sale of the Property outside the ordinary course of business is to be provided in accordance with Fed. R. Bankr. P. 2002(a)(2), (c)(1), and (k).  These provisions of Fed. R. Bankr. P. provide that all creditors are to receive at least 21 days' notice of the sale of estate assets outside the ordinary course of business, unless the Court, for cause, shortens the time or

directs another method of giving notice.  Fed. R. Bankr. P. 2002(a)(2).  Fed. R. Bankr. P. 2002(c)(1) provides that the notice of the proposed sale of assets is to include a general description of the Property, the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections.

23.     Debtor submits that based on the significant negotiation efforts expended by the parties with respect to the Property prior to filing this Motion, that the form and manner of notices proposed herein will result in the highest and best offers for the Property and give parties in interest adequate notice of the Sale and an opportunity to object to the terms of the Sale or proposed Bid Procedures.

## V.  AUTHORITY AND RELIEF

### A.    The Bankruptcy Code permits Debtor to sell the Property outside the ordinary course of business.

24.     Property of the estate may be sold outside the ordinary course of business. Bankruptcy Code § 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  A debtor-in-possession may sell substantially all of its assets prior to proposal of a plan of reorganization.  *In re Parkstone Med. Info. Sys.*, 2001 WL 36189822 at *1 (Bankr. S.D. Fla. Oct. 16, 2001).  Courts have held that transactions should be approved under Bankruptcy Code § 363(b)(1) when: (a) they are supported by the sound business judgment of debtor's management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the buyer is acting in good faith.  *See, e.g., Meyers v. Martin (In re Martin)*, 933 F.2d 513, 515 (7th Cir. 1991); *In re Abbott Dairies of Penn, Inc.*, 788 F.2d 143 (3d Cir. 1986);

14

*Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991); *In re Phoenix Steel Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009); *In re Chrysler LLC*, 405 B.R. 84 (Bankr. S.D.N.Y. 2009).  Here, each of these factors is met.

25.    Subject to the terms and conditions of the APS, Debtor, in the sound exercise of its business judgment has concluded that the sale of the Property to the highest and best bidder for the Property presents the best option for maximizing the value of the Debtor's estate.  In order to ensure the highest possible return for the Debtor's estate and its creditors, Debtor has required that Debtor's obligation to proceed under the APS be subject to the receipt of higher and better offers through a competitive Auction of the Property, as set forth herein.  Accordingly, Debtor respectfully submits that ample business justification exists for the sale of the Property.

### B.    The sale will be free and clear of liens, claims, and encumbrances.

26.    Pursuant to Bankruptcy Code § 363(f), Debtor will sell the Property free and clear of all liens, claims, liabilities, encumbrances and other interests.  All such liens will attach to the proceeds of the sale.  This Court has the statutory authority to authorize the sale free and clear of liens.  Pursuant to Bankruptcy Code § 363(f), a debtor acting with the power under Bankruptcy Code § 1107(a), may sell all or any part of property of the estate, free and clear of any and all liens, claims, liabilities, encumbrances, or other interests if:

(i)    applicable non-bankruptcy law permits sale of such property free and clear of such interest;

     (ii)     each entity holding a lien, claim or interest consents;

     (iii)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

     (iv)     such interest is a bona fide dispute, or

     (v)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *In re Smart World Tech., LLC*, 423 B.R. 166, 169 n. 3 (2d Cir. 2005); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (determining Bankruptcy Code § 363(f) is written in the disjunctive; the court may approve a sale "free and clear" provided at least one of the subsections is met). Debtor anticipates that it will obtain any necessary consent required to comply with Bankruptcy Code § 363(f), or will demonstrate that such secured claims could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest, or will satisfy one or more sections of §363(f)..

27.     To the extent there are any, Debtor is selling the Property free and clear of all successor liability claims, in addition to liens, claims, and encumbrances. *See, e.g., In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-90 (3d Cir. 2003); *In re Chrysler, LLC*, 576 F.3d 108, 126 (2d Cir. 2009); *American Living Sys. v. Bonapfel (In re All Am. of Ashburn, Inc.)*, 56 B.R. 186, 189-90 (Bankr. N.D. Ga. 1986), *aff'd*, 805 F.2d 1515 (11th Cir. 1986).

**C.     AGR may credit bid its Secured Claims at the Auction.**

28.     Bankruptcy Code § 363(k) provides a secured creditor the absolute right to credit bid its secured claims at the sale of the property securing its debt unless the Court

orders otherwise.  *See* 11 U.S.C. § 363(k); *In re SunCruz Casinos, LLC*, 298 B.R. 833, 838-39 (Bankr. S.D. Fla. 2003).  Pursuant to Bankruptcy Code § 363(k), AGR, or its assignee, has the right to credit bid its secured claim on the Property.  In the event that AGR, or its assignee, is not the Successful Bidder, its liens shall attach to the proceeds of the sale.

### D.    The Property will be sold in good faith.

29.    Bankruptcy Code § 363(m) provides that reversal or modification on appeal of a transaction authorized under Bankruptcy Code § 363(b) does not affect the validity of the sale to an entity that acquired the property in good faith.  *See* 11 U.S.C. § 363(m); *In re Stadium Man. Corp.*, 895 F.2d 845 (1st Cir. 1990); *In re Adamson Co.*, 159 F.3d 896 (4th Cir. 1998).

30.    Although the Bankruptcy Code does not define good faith, courts have recognized that the kind of misconduct that would destroy a good faith status involves fraud, collusion between buyers and some offerors, or an attempt to take grossly unfair advantage of other offerors.  *In re Abbott Dairies of Penn, Inc.*, 788 F.2d 143, 147 (3rd Cir. 1986); *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997).

31.    Debtor negotiated the APS with AGR at arms' length and in good faith. AGR is not affiliated with, or owned in whole or in part by anyone associated with the Debtor.  Additionally, while AGR has agreed to release the Guarantors from all sums outstanding under the Mortgage Documents, subject to satisfaction of certain conditions set forth herein and in the APS, such release of the Guarantors is not a condition to the sale of the Property made to any Successful Bidder other than AGR.  Those Guarantors

receiving a release of their guarantees have provided separate consideration by agreeing with AGR to enter into a replacement guaranty pursuant to which the Guarantors will be jointly and severally liable to AGR for all the representations, warranties, indemnifications, and other obligations of the Debtor in the APS, and the Guarantors will be providing additional consideration for such release as more particularly set forth in paragraph 14 hereof and in the APS.  Accordingly, Debtor requests that the Order approving the sale find that the buyer is a good-faith purchaser entitled to protections of Bankruptcy Code § 363(m).

  **E.**  **The Bid Procedures are appropriate and will maximize the value received from the Property.**

  32.  Courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales.  *See, e.g., In re Montgomery Ward Holding Corp.*, Case NO. 97-1409 (PJW) (Bankr. D. Del. Aug. 6, 1997); *In re Financial News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) (stating "court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankruptcy estates.")

  33.  The proposed Bid Procedures will allow Debtor to conduct the auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction, thereby increasing the likelihood that Debtor will receive the best possible consideration for the Property.  They

also allow Debtor to undertake the Auction process in as expeditious a manner as possible, which Debtor believes is essential to maintaining and maximizing the value of the estate and as it is required to do.

34.    Debtor believes that the Bid Procedures will encourage bidding for the Property and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. *See Integrated Resources*, 147 B.R. at 659; *In re 995 Fifth Avenue Assocs.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989).

> **F.    Rejection of certain executory contracts and unexpired leases should be approved.**

35.    Debtor seeks approval to reject the executory contracts specified and to be specified in the APS (collectively, "Executory Contracts").  Those Executory Contracts are: (1) Grey Oaks Brokerage and Marketing Agreement dated February 20, 2004; and (2) Agreement for Purchase and Sale dated February 4, 2004, certain provisions of which are also contained in the Warranty Deed of March 25, 2005 recorded in the Official Records of Collier County, Florida starting at Book 3761, Page 2895, and in the Warranty Deed of April 20, 2005 recorded in the Official Records of Collier County, Florida starting at Book 3783, Page 0927.

36.    Bankruptcy Code § 365(a) authorizes a debtor-in-possession to assume and assign or reject an executory contract or unexpired lease subject to the bankruptcy court's approval.  11 U.S.C. § 365(a); *see Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996).  A debtor's decision to assume or reject an executory contract or unexpired lease is subject to the "business judgment" test. *In re*

*Gardinier, Inc.*, 831 F.2d 974, 976 n.2 (11th Cir. 1987); *In re Chira*, 367 B.R. 888, 898 (S.D. Fla. 2007); *In re Prime Motors, Inc.*, 124 B.R. 378, 381 (Bankr. S.D. Fla. 1991). The sole inquiry is whether assumption or rejection will benefit this estate. *Id.*; *see also In re Hawaii Dimensions, Inc.*, 47 B.R. 425, 427 (D. Haw. 1985) ("[u]nder the business judgment test, a court should approve a debtor's proposed rejection if such rejection will benefit the estate").

37.    In applying the "business judgment" test, courts should show great deference to a debtor's decision to assume or reject an executory contract. *See Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstances, court approval of debtor's decision to assume or reject an executory contract "should be granted as a matter of course").  As long as the decision to assume or reject is a reasonable exercise of business judgment, courts should approve the assumption or rejection of an executory contract or unexpired lease. *See, e.g., NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 523 (1984); *Group of Institutional Investors v. Chicago M. St. P. & P. R. R. Co.*, 318 U.S. 523 (1943).

38.    The Debtor seeks to reject the Executory Contracts because it has determined that AGR does not wish to be bound by them because they are burdensome and provide no benefit to the Property which are more valuable without them.  The Debtor expects the same to be true for any other buyer.

39.    The Debtor reserves the right to amend the Motion to request the assumption of any contract necessary to implement the sale, subject to appropriate notice.

**G.      Statement Regarding Potential Lienholders and Interest Holders**

40.     Debtor believes that the following entities hold valid liens against the Property:

a.      AGR pursuant to the AGR Secured Debt.

b.      Junior DIP Lender to the Junior DIP Facility; and

c.      Collier County Tax Collector for unpaid ad valorem real estate taxes.

WHEREFORE the Debtor respectfully requests the entry of an Order:

A.      Authorizing the Debtor to sell the Property;

B.      Approving the form of the APS;

C.      Approving the Bidding Procedures set forth herein;

D.      Approving the Sale and Auction procedures set forth herein;

E.      Setting the Auction for _____, 2010 (to be approved and set by the Court);

F.      Setting a Sale Hearing for June 15, 2010, or as soon thereafter as the matter may be set for hearing in the Court's calendar;

G.      Approving the form and manner of notice of the Bidding Procedures and the sale as set forth herein;

H.      Approving the rejection of the Executory Contracts; and

I.        Granting such other relief as may be just and proper.

Dated: April 22, 2010.


                              /s/ Stephen R. Leslie
                        Stephen R. Leslie (Florida Bar No. 0000349)
                        STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
                        110 Madison Street - Suite 200
                        Tampa, Florida 33602
                        Phone: (813) 229-0144
                        Fax:    (813) 229-1811
                        Email: sleslie@srbp.com
                        Attorneys for Debtor

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing with exhibits has been furnished by the Court's CM/ECF system on April 22, 2010, or by U.S. Mail on April 23, 2010, to:

All Creditors and Parties in Interest


                              /s/ Stephen R. Leslie
                        Stephen R. Leslie (Florida Bar No. 0000349)